UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA T. O/B/O J.J.W.,

                              Plaintiff,

v.                                                              5:23-CV-00500 (GTS/TWD)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                          HOWARD D. OLINSKY, ESQ.
 *Attorney for Plaintiff*
250 South Clinton St. Ste. 210
Syracuse, NY 13202

UNITED STATES ATTORNEY'S OFFICE      CARLA B. FREEDMAN, ESQ.
NORTHERN DISTRICT OF NEW YORK
 *Attorney for Defendant*
100 S. Clinton St.
Syracuse, NY 13261

SOCIAL SECURITY ADMINISTRATION      CANDACE BROWN CASEY, ESQ.
OFFICE OF GENERAL COUNSEL
 *Attorney for Defendant*
6401 Security Boulevard
Baltimore, MD 21235


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned for report and recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  (Dkt. Nos. 11, 19, 21.)  Oral argument was not heard.  For the reasons discussed below, the Court recommends the Commissioner's decision be affirmed and the complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Tina T. is the mother of Claimant J.J.W.  (*See* T. at 603-04.)  Claimant was born on January 4, 2007.  (Administrative Transcript at 59.[1])  At the time of the Administrative Law Judge's ("ALJ's") decision at issue in this case, Claimant was 16 years of age and was being homeschooled at the ninth-grade level.  (T. at 604-05.)  Plaintiff has applied for Supplemental Security Income ("SSI") on Claimant's behalf twice.  (*See* T. at 125-32, 687-96.)  Plaintiff first applied for SSI on July 14, 2014.  (T. at 246.)  This application was denied at the initial level on August 13, 2014.  (T. at 132.)  Plaintiff requested a hearing before an ALJ on October 4, 2014, and a hearing was held before ALJ Marie Greener on September 28, 2016.  (T. at 137, 47.)  ALJ Greener heard the testimony of Plaintiff and Claimant.  (T. at 49-76.)  On December 7, 2016, ALJ Greener issued a decision finding that Claimant was not disabled under the Social Security Act.  (T. at 41.)  On December 8, 2016, Plaintiff requested that the Social Security Appeals Council review the ALJ's decision.  (T. at 225.)  The Appeals Council declined to review ALJ Greener's decision on December 1, 2017.  (T. at 10.)  On May 13, 2019, Plaintiff filed suit in the United States District Court for the Northern District of New York, alleging that proper notice of

---

[1] The Administrative Transcript is found at Dkt. Nos. 8 and 20.  The Administrative Transcript was originally filed without a true and accurate copy of Exhibit 25F, but this discrepancy was corrected when a supplement was filed on February 22, 2024.  *See* Dkt. Nos. 17, 20.  Citations from the Administrative Transcript will be referred to as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.  All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

the Appeals Council's 2017 denial had not been issued, and their decision was therefore premature.  (*See* T. at 652-62; *see also Tillotson v. Comm'r of Soc. Sec.*, 5:19-CV-00579 (FJS/TWD) (N.D.N.Y.).)  The Appeals Council set aside its December 1, 2017, denial on February 25, 2020.  (T. at 86.)  On September 24, 2020, the Appeals Council once again declined to review ALJ Greener's decision.  (T. at 1.)  Plaintiff filed suit in the United States District Court for the Northern District of New York on November 27, 2020, seeking judicial review of the Appeals Council's September 24, 2020, decision.  *See* Dkt. No. 11 at 2 (referencing *Tillotson v. Comm'r of Soc. Sec.*, 5:20-CV-01456 (MAD/TWD) (N.D.N.Y.)).  On stipulation of the parties, the Appeals Council's September 24, 2020, decision was reversed, and the matter was remanded to the Commissioner of Social Security ("the Commissioner" or "Defendant") for further proceedings.  (T. at 678.)

These proceedings would eventually be consolidated with Plaintiff's second application for SSI on behalf of Claimant.  (*See* T. at 565.)  Plaintiff filed that second application on April 26, 2018, alleging an onset date of December 8, 2016.  (T. at 687, 689.)  Plaintiff's second application was denied at the initial level on August 7, 2018.  (T. at 696.)  ALJ Laureen Penn held a hearing on February 3, 2020, and issued a decision finding that Plaintiff was not disabled under the Social Security Act on February 18, 2020.  (T. at 700, 712.)  The Appeals Council denied Plaintiff's request for review of ALJ Penn's decision on December 17, 2020.  (*See* T. at 682.)  On February 19, 2021, Plaintiff filed suit in the United States District Court for the Northern District of New York, and the court remanded on December 29, 2021.  *See id; see also Tillotson v. Comm'r of Soc. Sec.*, 5:21-CV-00192 (ML) (N.D.N.Y.).  The Appeals Council consolidated these two applications and assigned them to a new ALJ for rehearing and further proceedings.  (T. at 682-84.)

On January 17, 2023, ALJ Elizabeth Koennecke ("the ALJ") held an administrative hearing, and, on February 21, 2023, issued a decision finding that Claimant was not disabled under the Social Security Act. (T. at 600, 589.) Plaintiff did not file written exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction, so the ALJ's decision became the final decision of the Commissioner of Social Security on April 23, 2023. Dkt. No. 11 at 3; 20 C.F.R. § 416.1484(d). Plaintiff timely commenced this action on April 24, 2023. (Dkt. No. 1.)

## II.   APPLICABLE LAW

### A.  Scope of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). An ALJ must set forth the crucial factors

justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

### B.  Standard for Benefits[2]

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

The ALJ follows a three-step sequential analysis to determine whether a child is entitled to SSI benefits. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 140 (N.D.N.Y. 2012).

First, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a medically determinable impairment that is severe. *Id.* at § 416.924(c). Third, the ALJ must determine whether the child's impairment or combination of impairments medically or functionally equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings"). *Id.* at § 416.924(d).

The limitations caused by a child's severe impairment or combination of impairments are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects, (5) caring for yourself; and (6) health and physical well-being. *Id.* at § 416.926a(b)(1). To demonstrate functional equivalence to a disability, the child must exhibit a "marked" limitation in two domains or an "extreme" limitation in one domain. *Id.* at § 416.926a(a). A child has a "marked" limitation if the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926(e)(2)(i). An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926(e)(3)(i).

## III.    THE ALJ'S DECISION

In her February 21, 2023, decision, the ALJ applied the three-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims concerning children. (T. at 567.) The ALJ began by determining Claimant was a school-aged child (age 6 to 12) at the time

of Plaintiff's first application for SSI and is currently an adolescent (age 12 to 18). *Id.* At the

first step, the ALJ determined Claimant had not engaged in substantial gainful activity at any

point on or since June 17, 2014. *Id.* At the second step, the ALJ determined Claimant has the

following severe impairments: "attention deficit hyperactivity disorder (ADHD) and a learning

disorder." *Id.* (citing 20 C.F.R. § 416.972). The ALJ determined Claimant's "fine motor delays

and other related developmental delays" are medically determinable but non-severe. (T. at 568.)

The ALJ also determined his other alleged impairments, including "cough, abdominal pain,

diarrhea, headaches, urinating himself often, palpitations, dizziness/giddiness, and episodes of

lips turning blue," as well as a "photological disorder or phonological disorder" are not

medically determinable. (T. at 569.)

The ALJ then determined Claimant does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404,

Subpart P, Appendix 1 ("the Listings"). *Id.* The ALJ considered whether Claimant's

impairments meet or medically equal listings 112.02 ("Neurocognitive disorders"), 112.04

("Depressive, bipolar and related disorders"), 112.05 ("Intellectual disorder"), 112.06 ("Anxiety

and obsessive-compulsive disorders"), 112.10 ("Autism spectrum disorder"), and 112.11

("Neurodevelopmental disorders"). (T. at 570.) The ALJ applied the B Criteria at this step,

determining as follows:

> mild difficulties in understanding, remembering or applying
> information; moderate difficulties interacting with others; marked
> difficulties in concentrating, persisting or maintaining pace; and
> moderate difficulties in adapting or managing oneself under the
> various listings.

*Id.* The ALJ also applied the C Criteria at this step, noting that Claimant "has not required

placement in a hospital, board and care facility, day treatment program, or other environment

that provides a highly supportive living arrangement for persistent or uncontrolled psychiatric symptoms." *Id.* The ALJ found "the degree of limitation identified by the other sources" to be not supported by Claimant's "overall response to ongoing mental health treatment… ." *Id.* The ALJ also noted that, while Claimant was repeating ninth grade, he had "generally adapted well to completing multiple other prior grades since the earliest Title XVI application[] date … without the need for more frequent mental health treatment or inpatient hospitalization … ." (T. at 571.)

Next, the ALJ determined that Claimant does not have an impairment or combination of impairments that functionally equals the severity of one of the Listings. *Id.* The ALJ found that he has:

- <u>less than a marked</u> limitation in acquiring and using information;
- <u>a marked</u> limitation in attending and completing tasks;
- <u>less than a marked</u> limitation in interacting and relating with others;
- <u>no</u> limitation in moving about and manipulating objects;
- <u>less than a marked</u> limitation in the ability to care for himself; and
- <u>no</u> limitation in health and physical well-being.

(T. at 572) (emphasis in original). The ALJ discussed each of these findings in turn, after a general assessment of Claimant's symptoms and the available medical opinions. (T. at 573-89.) Thus, the ALJ determined that he has not been under a disability, as defined by the Social Security Act, from June 17, 2014, until the date of the ALJ's decision, February 21, 2023. (T. at 589.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff contends that the ALJ erred by failing to adequately evaluate Plaintiff's and the opinions of Claimant's former schoolteachers, and conform her analysis with SSA regulations. Dkt. No. 11 at 8. Plaintiff argues that this error leaves the ALJs determinations unsupported by

substantial evidence.  *Id.*  Plaintiff argues specifically that the ALJ "should have considered the progression of the overall evidence instead of focusing on the earliest evidence," "considered the instruction of SSR 09-2p concerning novel environments like consultative exams," and "more thoroughly considered the testimony of Plaintiff."  *Id.* at 11.  Plaintiff also contends that the ALJ failed to provide a proper reason for dismissing one of Claimant's school teacher's opinions.  *Id.* at 16-17.

Defendant contends that the ALJ's decision is supported by substantial evidence and is free from legal error.  Dkt. No. 7 at 5.  Defendant argues that substantial evidence supports the ALJ's findings of less than marked limitations in all the categories mentioned by Plaintiff.  *Id.* at 5-6.  Defendant also argues that the ALJ's conclusions are supported by Plaintiff's history of limited treatment.  *Id.* at 8-9.  Defendant contends finally that substantial evidence supports the ALJ's assessment of Plaintiff's schoolteacher's opinions.  *Id.* at 22.

## V.    THE COURT'S ANALYSIS

### A.  The ALJ's evaluation of Claimant's seventh grade teacher's opinion is supported by substantial evidence and not legally erroneous

The ALJ found that the limitations expressed in a Teacher Questionnaire completed by Ms. Ceilly, Claimant's Seventh Grade Teacher, with additional input from Claimant's PE, ELA, and AIS Math teachers, was inconsistent with Claimant's record.  (T. at 577 (citing T. at 1016-22).)  The ALJ therefore "accord[ed] less weight to the assessments and observations of these teachers."  *Id.*  Because Plaintiff first applied for SSI on behalf of Claimant in 2014, the pre-2017 regulations for ALJ evaluation of medical and nonmedical opinions apply here.  *See* Dkt. No. 19 at 4 n.1 (explaining that the SSA's internal guidelines require them, in consolidated cases with applications filed before and after March 27, 2017, to apply the pre-2017 regulations for the evaluation of opinions).  The Teacher Questionnaires are nonmedical opinions, because they are

not "statements from acceptable medical sources that reflect judgments about the nature and severity of [Claimant's] impairment(s)." 20 C.F.R. § 416.972(a)(1). Since nonmedical opinions may "reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources," they are still considered according to the same standards as medical opinions, but the standards for articulation are lower. *Id.* at § 416.972(f)(1). An ALJ must "explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." *Id.* at § 416.972(f)(2).

Here, the ALJ fully explained her reasoning for assigning low weight to Ms. Ceilly's questionnaire. The ALJ's determination is not legally erroneous, and it is supported by substantial evidence. The ALJ generally accepted that Claimant's performance in school had declined since the third and fifth grade, but determined the decline could be partially explained by inconsistent treatment and poor sleep habits. (T. at 577 (citing 1181, 1179).) On February 3, 2020, Claimant was "not treated with any regular medication and has not been since 2016." (T. at 1181.) Claimant was advised to cease using electronic devices before bedtime, as "this will help with education as well as bed sleep." *Id.* Claimant remained "off his ADHD medications" at check-ups on January 19, February 1 and 22, and May 26, 2022. (T. at 1176, 1173, 1170, 1167.)

"It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses … .'" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d. Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). The ALJ determined that Ms. Ceilly's opinion was inconsistent with evidence from Claimant's medical record, because Claimant's declining school performance since 2016 could

be at least partially explained by his lack of medication beginning in 2016.  Since the ALJ's

reasoning is supported by "such relevant evidence as a reasonable mind might accept as adequate

to support" his conclusions, remand is not appropriate on these grounds.  *Sczepanski*, 946 F.3d at

157 (quoting *Moran*, 569 F.3d at 112) (internal quotation marks and citation omitted).

### B.  Substantial evidence supports the ALJ's assignment of less than marked limitations in 'interacting and relating with others' and 'caring for yourself'

The ALJ assigned Claimant a marked limitation in attending and completing tasks.  (T. at

572.)  Plaintiff argues, correctly, that the ALJ finding "a marked limitation in either interacting

and relating with others or caring for himself" would have led to a finding of disability, making

an error of law or a decision not supported by substantial evidence a harmful error.  Dkt. No. 11

at 8.  Plaintiff argues that a finding of disability could be supported by substantial evidence.  *See*

*id.* at 3-7 (outlining evidence from Claimant's third grade, fifth grade, and seventh grade

teachers, as well as Plaintiff's testimony, which support marked limitations in 'interacting with

others' and 'caring for yourself'.)  "But whether there is substantial evidence supporting the

applicant's view is not the question here; rather, we must decide whether substantial evidence

supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)

(emphasis in original) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Talavera v.*

*Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)).  "When applying the substantial evidence test to a

finding that a [claimant] was not disabled, the Court 'will not reweigh the evidence presented at

the administrative hearing … nor will it determine whether [the applicant] actually was disabled.

[Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is

substantial evidence [in the record] to support it.'"  *Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-

1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) (quoting *Lefford v.*

11

*McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)) *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016).

### i.   Interacting and relating with others

The domain of interacting and relating with others concerns a claimant's ability to

> initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.

20 C.F.R. § 416.926a(i).  Although the regulations caution that a claimant's particular limitations in this domain "may be different from the ones listed here," they provide the following examples: "You do not reach out to be picked up and held by your caregiver," "[y]ou have no close friends, or your friends are all older or younger than you," "[y]ou avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences," "[y]ou have difficulty playing games or sports with rules," "[y]ou have difficulty communicating with others …," and "[y]ou have difficulty speaking intelligibly or with adequate fluency."  *Id.* at §§ 416.926a(i)(3)(i)-(vi).

At Step 3, the ALJ assigned Claimant "<u>less than a marked</u> limitation in interacting and relating with others."  (T. at 572) (emphasis in original).  In making this conclusion, the ALJ relied on a 2018 prior administrative medical finding ("PAMF") (T. at 583 (citing T. at 688-96)); observations from Claimant's teachers dated 2016 and 2018 (*id.* (citing T. at 366-74, 949-69)); and two consultative examiner's reports, from 2014 and 2018 (*id.* (citing T. at 435-38, 1075-78)).

In the 2018 PAMF, state agency reviewing psychologist T. Bruni, PhD[3] assigned

Claimant a "Less Than Marked" limitation in interacting and relating with others, explaining:

> [Claimant] has a mild limitation in the area of socialization. He is
> independent in his classes and follows the classroom
> structures/rules. At psyche [consultative examination],
> [Claimant's] relationship with siblings and peers was described as
> 'good.' [Claimant's] behavior was adequate at the [consultative
> examination].

(T. at 693.)  The ALJ generally accorded Dr. Bruni's opinion great weight, but she declined to

adopt "the finding that the claimant has less than marked limitations in attending and completing

tasks []."  (T. at 576 (citing T. at 693).)

The ALJ accorded Dr. Bruni's opinion great weight, except for his optimistic assessment

of Claimant's ability to attend and complete tasks, because Dr. Bruni was offering an opinion

within his area of specialty, he has an understanding of the Social Security Administration's

disability programs and their evidentiary requirements, and he was able "to review records from

various medical sources."  (T. at 576); *see* 20 C.F.R. §§ 416.927(c)(5)-(6).  The ALJ

acknowledged that Dr. Bruni "did not have the benefit of examining the claimant and only

considered the claimant's functioning as a school-aged child," but assessed Dr. Bruni's opinion

as "generally consistent with the objective medical evidence that indicates that the severity of the

claimant's impairments do not result in two marked or one extreme limitation."  (T. at 576); *see*

20 C.F.R. §§ 416.927(c)(4).  The ALJ's explanation of the consistency factor is terse.[4]  Since the

---

[3] A "Medical Specialty Code" of 38 (T. at 696) indicates a specialization in "Psychology."  List
of Social Security Disability Programs Medical Specialty Codes, Social Security Administration
Program Operations Manual Systems (POMS) (May 5, 2015),
https://secure.ssa.gov/poms.nsf/lnx/0424501004.

[4] If the current regulations governing ALJ analysis of opinion evidence applied in the instant
case, the ALJ's analysis may be legally insufficient because it does not "explain *how* [the ALJ]
considered" the opinion in terms of consistency "with the other medical sources and nonmedical
sources in the claim."  20 C.F.R. §§ 416.920c(b)(2), (c)(2).

pre-2017 regulations apply, the ALJ need only have "consider[ed] the medical opinions in [Claimant's] case record together with the rest of the relevant evidence," specifically for consistency "with the record as a whole."  20 C.F.R. §§ 416.927(b), (c)(4).

While the ALJ did not discuss their consideration of the consistency factor in detail, "'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed.'"  *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alteration in original).  The ALJ relied on Claimant's lack of "significant behavior problems," sometimes described as "cooperative" behavior, during repeated medical exams to support his conclusion.  (T. at 583 (citing T. at 402, 405-34, 447-90, 509-59).)

Plaintiff correctly argues that ALJ's should not overly rely on a child with ADHD's "calmer, less inattentive, or less out-of-control behavior in a novel or one-on-one setting."  Dkt. No. 11 at 12.  However, the ALJ's conclusion here is supported by Claimant's longitudinal medical record, not the results of a single examination.  At a June 10, 2014, appointment to discuss "behavioral issues at school," Claimant "present[ed] with ADHD."  (T. at 405.)  At a follow-up appointment on July 15, 2014, Claimant was "[t]aking medication as prescribed. [M]edication has really settled [Claimant] down per mom and sister present. He is able to sit for longer periods and concentrate, focusing better, less hyper. Shows decreased ADHD symptoms since last visit."  (T. at 407.)  On October 14, 2014, Claimant was "[t]aking medication as described," and symptoms were "[a]lleviated by medications."  (T. at 449.)  However, he "fidgets or squirms when sitting," and "[s]chool performance is declining."  *Id.*  Claimant reportedly "does not play cooperatively, share, get along with peers, get along with parents and siblings, get along with the principal and teachers…,"  but he "does follow instructions."  *Id.*  On

January 15, 2015, Plaintiff was "not sure medication is helping or not," and Claimant "still seems to be struggling with school. He often gets wound up later in the evening with difficulty getting him to settle down for bedtime."  (T. at 453.)  On  March 19, 2015, Claimant was "HAVING TROUBLE WITH PAYING ATTENTION IN SCHOOL – SCHOOL IS COMPLAINING. GRADES AREN'T VERY GOOD."  (T. at 455) (emphasis in original).  On June 23, 2015, Claimant " show[ed] no change when taking medication, mom and school staff agree with this statement."  (T. at 460.)  However, on December 28, 2015, Claimant's symptoms were "[a]lleviated by medications."  (T. at 463.)  Plaintiff "DOESN'T FEEL HIS MEDICATION NEEDS AN INCREASE. SCHOOL IS HELPING WITH EXTRA HELP AND THEY ARE STARTING AN INTERVENTION PROGRAM WITH HIM," and "[c]urrent Methylphenidate dosing seems to be helpful without significant adverse side effects perceived."  *Id.* (emphasis in original).  No changes to Claimant's condition were reported at a March 8, 2016, checkup.  (T. at 466.)  On June 9, 2016, no changes were recorded except that "[s]chool performance is average. Child does play cooperatively."  (T. at 535.)

Claimant was never described as uncooperative or disruptive during his medical exams. An ALJ is "entitled to rely not only on what the record says, but also on what it does not say." *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)).  These records provide an adequate evidentiary basis to support Dr. Bruni's assertion that Claimant "has a mild limitation in the area of socialization," as well as the ALJ's assertion that Claimant did not exhibit "significant behavior problems during in-office exams," which bolsters the ALJ's assignment of less than marked limitations in interacting and relating with others.  (T. at 693, 583.)

Next, the ALJ found that Teacher Questionnaires completed by Claimant's Third Grade Teacher Ms. Becker and Fifth Grade Teacher Ms. Episcopo, supported less than marked limitations in the domain of interacting and relating with others.  (T. at 583 (referencing T. at 366-74, 949-69).)  Ms. Becker indicated Claimant had "no problem" in 9/13 of the assessed functional areas, including: playing cooperatively with other children, making and keeping friends, asking permission appropriately, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting the meaning of facial expressions, body language, hints, and sarcasm, and using adequate vocabulary and grammar to express thoughts and ideas in general.  (T. at 370.)  Ms. Becker indicated slight, obvious, or serious problems in seeking attention appropriately, expressing anger appropriately, following rules, and respecting/obeying adults in authority, noting specifically that Claimant had a serious, weekly-recurring problem seeking attention appropriately, and an obvious but "inconsistent" monthly-recurring problem with respecting adults.  *Id.*  Ms. Becker elaborated that Claimant would "be on the floor [and] try to trip kids," "attempt to engage other members of the class," and "refuse to complete work."  *Id.*  Ms. Episcopo indicated Claimant had no problem in all functional areas except for expressing anger appropriately and respecting adults, where she indicated slight problems.  (T. at 954.)  Ms. Episcopo checked that Claimant's slight problem expressing anger appropriately occurred with a monthly frequency, and his slight problem respecting adults occurred with a weekly frequency.  *Id.*  Ms. Episcopo also stated that "[Claimant] is independent in our class and follows the classroom structures/rules."  *Id.*

For comparison, Ms. Ceilly's Teacher Questionnaire demonstrated improvement in some functional areas and decline in others.  (*See* T. at 1016-22.)  In the domain of interacting and

relating with others, Ms. Ceilly indicated Claimant had no problem with 8/13 functional areas; a slight problem in following rules, introducing and maintaining relevant and appropriate topics of conversation, and interpreting facial expressions, body language, hints, and sarcasm; and an obvious problem relating experiences and telling stories and using adequate vocabulary and grammar to express thoughts and ideas in general.  (T. at 1018.)  Ms. Ceilly noted that, with the Claimant, "[i]ndependent work is rarely, if ever, done."  (T. at 1019.)  Ms. Ceilly's questionnaire indicates problems in five functional areas, which is higher than the four in Ms. Becker's and two in Ms. Episcopo's, but Ms. Ceilly indicated less serious problems than Ms. Becker. (*Compare* T. at 370-71 *with* T. at 1019-20.)  Specifically, Ms. Becker describes Claimant acting out by tripping fellow students, while Ms. Ceilly describes no inappropriate physical actions or serious problems of any other kind.  (T. at 370, 1018-19.)

Even if this Court found that the ALJ inappropriately disregarded Ms. Ceilly's questionnaire, the error would be harmless in this domain.  There is no bright line rule denoting how many slight, obvious, or even serious problems in functional areas equate to a marked limitation in the relevant domain.  *See Christina B. v. Comm'r of Soc. Sec.*, 5:19-CV-1192, 2020 WL 5848732, at *7 (N.D.N.Y. Oct. 1, 2020).  Ms. Ceilly did not endorse any serious problems in functional areas within this domain, it was not "necessary to implement behavior modification strategies," and the only narrative comment relates to Claimant's lack of ability to work independently.  (T. at 1018-19.)  These facts support the existence of some level of impairment within this domain, but they do not demand a finding of marked limitation.

Finally, the ALJ relied on the opinions of the consultative examiners in assigning Claimant a less than marked limitation in this domain.  (T. at 583 (citing T. at 435-38, 1075-78).) Both consultative examinations were performed by Dennis M. Noia, Ph.D., in 2014 and 2018.

(T. at 435, 1075.)  Dr. Noia indicated in 2014 that Claimant "appears to be able to relate to and interact well with others."  (T. at 437.)  He indicated in 2018 that Claimant's "relationship with parents and other adults/authority figures is usually good," his "relationship with siblings is good," his "relationship with peers is usually good," "[s]ocially, he gets along with friends and family," and "[h]e appears to have no limitations adequately maintaining social behavior."  (T. at 1075-78.)

The ALJ's assignment of less than marked limitations in the domain of interacting and relating with others is supported by substantial evidence, including one PAMF, two consultative examiner's reports, two teachers' assessments, and Claimant's longitudinal medical record. Although Plaintiff argues the ALJ could have made a different determination with the information available to them, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses … .'" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d. Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  Absent an error of law, this Court will not reweigh the evidence presented at the administrative hearing.  *See Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016).

### ii. Caring for himself

The domain of caring for yourself concerns a claimant's ability to

> maintain a healthy emotional and physical state, including how
> well you get your physical and emotional wants and needs met in
> appropriate ways; how you cope with stress and changes in your
> environment; and whether you take care of your own health.

20 C.F.R. § 416.926a(k). As with the domain of interacting and relating with others, the

regulations provide examples of limitations while cautioning that an individual claimant's "may

be different." *Id.* at § 416.926a(k)(3). The examples include: "You continue to place non-

nutritive or inedible objects in your mouth," "[y]ou often use self-soothing activities showing

developmental regression …, or you have restrictive or stereotyped mannerisms …," "[y]ou do

not dress or bathe yourself appropriately for your age because you have an impairment(s) that

affects this domain," "[y]ou engage in self-injurious behavior …, or you ignore safety rules,"

"[y]ou do not spontaneously pursue enjoyable activities or interests," and "[y]ou have

disturbance in eating or sleeping patterns." *Id.* at § 416.926a(k)(i)-(vi).

At Step 3, the ALJ assigned Claimant "<u>less than a marked</u> limitation in the ability to care

for himself." (T. at 572) (emphasis in original). In making this conclusion, the ALJ relied on the

same 2018 PAMF, teacher questionnaires, and consultative examiner's reports as in the previous

domain. (T. at 586 (citing T. at 688-96, 366-74, 949-69, 435-38, 1075-78).) The ALJ also relied

on Claimant's "limited treatment, overall response to medication management of his condition,

and his engagement in a range of activities of daily living." (T. at 586.)

In the 2018 PAMF, Dr. Bruni assessed Claimant as having a "Less Than Marked"

impairment in caring for himself. (T. at 693.) Dr Bruni explained

> [Claimant] showed a mild limitation in self-care. [Claimant] is able
> to calm himself or figure out situations. If he becomes angry,

> [Claimant] will shut down and not try. [Claimant] can move past it
> and start again.

Dr. Bruni also mentioned that Claimant has "[n]o history of prior outpatient or inpatient mental health treatment, none currently." *Id.*

In her Teacher Questionnaire, Ms. Becker indicated Claimant has problems in 8/10 functional areas. (T. at 372.) Ms. Becker indicated very serious problems in cooperating with medication and identifying and asserting emotional needs; a serious problem in using appropriate coping skills; obvious problems in using good judgement regarding personal safety and responding appropriately to changes in own mood; and slight problems in handling frustration appropriately, being patient when necessary, and knowing when to ask for help. *Id.* The only functional areas in which Ms. Becker did not indicate a problem were taking care of personal hygiene and caring for physical needs. *Id.* Ms. Becker did not offer a narrative explanation for her indications, but did note that most problems were monthly occurrences. *Id.* Cooperating in, or being responsible for, taking required medication was a daily-recurring issue. *Id.*

Ms. Episcopo's responses were considerably more positive in the domain of caring for himself. (*See* T. at 956.) However, Ms. Episcopo indicated that she either did not witness Claimant's relevant behavior or the behavior was non-applicable in four out of ten areas, namely taking care of personal hygiene, caring for physical needs, cooperating in medication, and using good judgement regarding hazards. *Id.* Of the remaining six functional areas, Claimant reportedly had slight problems in five: handling frustration appropriately, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, using appropriate coping skills, and knowing when to ask for help. *Id.* Claimant was reported not to have a problem in being patient when necessary. *Id.* Ms. Episcopo offered the following narrative explanation:

> [Claimant] has shown growth this year in asking for help when he
> needs it. When left to calm self or figure out a situation, [Claimant]
> does so. If he gets angry/or frustrated, he will 'shut' down and not
> try. Given time he will move past it and start again.

(T. at 956.)  In the additional comments section, Ms. Episcopo clarified that Claimant and his

classmates "work on the same skills but at different leveled difficulties. [Claimant] has had

difficulty completing homework all year."  (T. at 958.)

Although the ALJ did not rely on Ms. Ceilly's questionnaire, her indications and

narrative explanations in this domain were not dramatically worse than those of Ms. Episcopo or

Ms. Becker.  (*See* T. at 1020.)  Ms. Ceilly only filled out responses for two of the ten functional

areas, noting that Claimant has obvious problems in handling frustration appropriately and using

appropriate coping skills.  *Id.*  Ms. Ceilly did not fill out the frequency portion of the

questionnaire, but she did state "Student often shuts down (does not participate) during in-school

work periods, especially when writing is involved."  *Id.*

In the 2014 consultative examination report, Dr. Noia indicated mild impairments related

to this domain.  Claimant was "able to dress, bathe, and groom himself at age appropriate levels.

He helps with household chores. [Claimant] is not permitted to travel in his neighborhood

independently."  (T. at 437.)  In 2018, Dr. Noia stated Claimant "is able to dress, bathe, and

groom himself at age appropriate levels. He does not help with household chores. [Claimant] is

sometimes permitted to travel in his neighborhood independently with set limits."  (T. at 1077.)

Bearing in mind that the applicable standard of review for decisions of the Commissioner

of Social Security is "substantial evidence," and that "the threshold for such evidentiary

sufficiency is not high," the ALJ's determination that Claimant suffers from a less than marked

limitation in caring for himself is colorable.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The ALJ based her decision on information from Claimant's teachers, who were in daily contact

with Claimant for months at a time, as well as two consultative examinations four years apart, and the findings of a state agency reviewing physician.  (*See* T. at 586-88.)  "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Gamble v. Comm'r of Soc. Sec.*, No. 1:15-CV-0352 (GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016) (quoting *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)), *report-recommendation adopted by* 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016).  Plaintiff has not isolated an error of law which would require remand, and the ALJ's determinations here are supported by substantial evidence, so remand is not appropriate.

## VI.    CONCLUSION

Considering the foregoing, the Court finds the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 416.924(d).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's motion for judgment on the pleadings (Dkt. No. 19) be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  April 19, 2024
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge